UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ron Meyers,

           Plaintiff,                       **MEMORANDUM OPINION AND ORDER**

      v.                                    Civil No. 11-291 ADM/TNL

Tom Roy,
Commissioner of Minnesota Department of Corrections,
in his official and individual capacities; and
David Bjerga, Superintendent of the
Minnesota Bureau of Criminal Apprehension,
in his official and individual capacities,

           Defendants.

___

John Fitzgerald and Bradford W. Colbert, Esq., Legal Assistance to Minnesota Prisoners, St. Paul, MN, on behalf of Plaintiff.

Angela Helseth Kiese, Esq., Minnesota Attorney General's Office, St. Paul, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On December 19, 2011, the undersigned United States District Judge heard oral argument on Plaintiff Ron Meyers' Motion for Summary Judgment [Docket No. 18] ("Meyers' SJ Motion") and Defendants' Motion for Summary Judgment [Docket No. 25] ("Defendants' SJ Motion"). For the reasons stated below, Defendants' SJ Motion is granted and Meyers' SJ Motion denied.

## II. BACKGROUND[1]

Ron Meyers was arrested and charged with criminal sexual conduct in the fourth degree on July

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

17, 1995. State v. Meyers, No. 55-CR-09-930, 2011 WL 382591, at *1 (Minn. Ct. App. Feb. 8, 2011), rev. denied (Apr. 27, 2011). Fourth-degree criminal sexual conduct involves "sexual contact" with another "us[ing] force or coercion to accomplish the sexual contact." Minn. Stat. § 609.345, subd. 1(c)). During plea negotiations, however, the prosecutor conceded the facts did not support a charge of criminal sexual conduct in the fourth degree, see Meyers, 2011 WL 382591, at *4. He instead concluded that Meyers committed a lesser offense, criminal sexual conduct in the fifth degree, which is nonconsensual sexual contact without the use of force or coercion. Id. at *1.

Meyers pled guilty to fifth-degree sexual conduct under Minnesota Statute § 609.3451, subd. 1. The state district court ordered Meyers to undergo a psychosexual evaluation, and the examiner concluded Meyers was not a predatory offender. See Meyers, 2011 WL 382591, at *1. The state district court ruled that Meyers was not a predatory offender and did not need to register under the predator registration requirement, Minnesota Statute § 234.166, subd. 1(b). Id. While Meyers was serving his sentence, the Board of Criminal Apprehension ("BCA") contacted him regarding his registration requirements under Minnesota Statute § 243.166. See Defs.' Mem. Supp. Summ. J. [Docket No. 26] Att. 2 ("Weyman Aff.") ¶ 3.

On February 24, 1998, the BCA received Meyers' first offender registration form. Id. Atts. 4–5 ("Defs.' App. 94–95"). Meyers submitted a change of address notice after his release from prison later that year. Id. 96-97. On October 28, 1999, the Blue Earth County Attorney charged Meyers with violating the predatory offender registration statute, and that charge was dismissed only after Meyers pled guilty to a similar registration offense in August 2003. Id. 213-17. Meyers was convicted and sentenced for failure to register in July 2004, and his registration period was extended based on his

2

incarceration and non-compliance. Id. 215; Weyman Aff. ¶ 13. In December 2004, Meyers also pled guilty to second-degree assault and was sentenced to fifty-seven months. Id. ¶ 14.

In June 2007, the BCA restarted Meyers' registration period based on his 2004 assault conviction, and his registration period was extended again after his release date was extended. Id. ¶ 16. The Olmsted County Attorney charged Meyers with failure to register as a predatory offender again on January 1, 2009. Defs.' App. 164–68. Meyers moved to dismiss that claim, the district court denied the motion. A jury then found Meyers guilty of failing to register, and he was sentenced to 18 months' imprisonment. Id. 169.

Meyers appealed that conviction, arguing that the registration statute violated the separation of powers doctrine, his substantive and procedural due process rights, and the Ex Post Facto Clauses of the state and federal constitutions. See generally Meyers, 2011 WL 382591. The Court of Appeals denied his request for relief, stating that Meyers could have demanded a probable cause hearing and filed a motion to dismiss his 1995 fourth-degree criminal sexual conduct charge, but he failed to do so. Id. at *3. The court determined that probable cause did exist in 1995 for the fourth-degree charge, and that as a result Meyers was required to register. Id. at *4. It dismissed Meyers' other claims as well. The Minnesota Supreme Court denied review on April 27, 2011. Defs.' App. 10. Meyers filed his Complaint [Docket No. 1] with this Court on February 4, 2011.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if

3

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party, however, may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Meyers has Failed to Establish Equitable Estoppel or that Minn. Stat. § 243.166 is Unconstitutional as Applied

Meyers argues that Minnesota's predatory offender registration statute, Minn. Stat. § 243.166, is unconstitutional as applied to him. Specifically, Meyers argues that the statute is unconstitutional because it violates substantive and procedural due process, the separation of powers doctrine, and the prohibition of ex post facto laws. Additionally, Meyers raises for the first time in his memorandum an equitable estoppel claim. See Pl.'s Mem. in Supp. Of Mot. for Summ. J. [Docket No. 21] ("Pl.'s Mem. Supp. Summ. J.") 26. For the reasons set forth below, Meyers has failed to establish his claim for equitable estoppel or the unconstitutionality of Minn. Stat § 243.166 as applied to him.

#### 1. Minnesota Registration Statute

Minnesota law requires a person to register if he was "charged with . . . criminal sexual conduct under section . . . 609.345" and "convicted of . . . that offense or another offense arising out of the same set of circumstances." Minn. Stat § 243.166, subd. 1b(1)(iii). The court is charged with informing the individual of his registration duty, and if the court fails to do that the "assigned corrections agent shall notify the person of the requirements." Id. § 243.166, subd. 2. A person required to

register under this section must continue to do so for ten years, or until probation, supervised release, or conditional release occurs. Id. § 243.166, subd. 6(a). Failing to register can result in an additional five years of required registration, id. § 243.166, subd. 6(b), and a subsequent conviction for a new offense restarts the ten-year registration period, id. § 243.166, subd. 6(c)).

The registration data required by Minn. Stat. § 243.166, subd. 1 is "used only for law enforcement and corrections purposes," in addition to "[s]tate-operated services" such as human services programs. Id. § 243.166, subd. 7. Only when individuals fail to comply with the registration requirements is that information made public through "electronic, computerized, or other accessible means," and is "limited to the information necessary for the public to assist law enforcement in locating the offender." Id. § 243.166, subd. 7a.

### 2. Procedural Due Process

Meyers avers that his procedural due process rights were violated by the Minnesota predatory offender registration statute. Specifically, Meyers' argument is that Minnesota's registration statute violated his procedural due process rights by implicating a liberty interest even though he was never convicted of the predatory offense requiring such registration. See Pl.'s Mem. Supp. Summ. J. 21–25. Meyers' arguments are unavailing.

The Fourteenth Amendment guarantees procedural due process before the State may "deprive any person of life, liberty, or property." U.S. Const. amend XIV, § 1. To prove a procedural due process violation, the plaintiff must establish that a protectable interest is implicated and that due process was not afforded in the deprivation of that interest. See Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 569–70 (1972). Loss to reputation alone has been held insufficient to create a

5

protectable liberty interest; instead, it must be "coupled with some other tangible element to rise to the level of a protectible property interest." Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003). Courts apply this "stigma plus" test to claims of loss of reputation. Id.; see also Paul v. Davis, 424 U.S. 693, 701–02 (1976) ("[R]eputation alone, apart from some more tangible interests such as employment, is [not] 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.").

Meyers has failed to meet the requirements of the "stigma plus" test, and therefore no protectable liberty interest is implicated which would require procedural due process. Meyers cites a case from the Ninth Circuit that found a state statute classifying inmates as sex offenders without a hearing and requiring them to complete a treatment program prior to parole eligibility implicated a protectable liberty interest. See Neal v. Shimoda, 131 F.3d 818, 828–29 (9th Cir. 1997). The U.S. Court of Appeals for the Eighth Circuit, however, has held that Minn. Stat. § 243.166 does not implicate a liberty interest because it neither publicly disseminates the information nor imposes a significant burden of registration on offenders. Gunderson, 339 F.3d at 644; see also Boutin v. LaFleur, 591 N.W.2d 711 (Minn. 1999) (finding Minn. Stat. § 243.166 does not violate the "stigma plus" test because while a predatory offender label is "injurious to one's reputation," "there is no recognizable interest in being free from having to update address information."). Since Gunderson was decided, Minnesota's registration statute has undergone minor modifications to require disclosure of the registration information to healthcare facilities and to provide registration procedures for persons lacking a primary address. Minn. Stat. §§ 243.166 subds. 3a, 4b. These additional registration and disclosure requirements do not significantly increase either the "stigma" or the "plus" factors. Accordingly, Minn.

Stat. § 243.166 does not violate a liberty interest afforded due process under the Fourteenth Amendment.

Even if Minn. Stat. § 243.166 was found to violate a protectable liberty interest, Meyers was afforded the notice and opportunity to be heard required by procedural due process. Meyers could have contested the probable cause for the registration charge prior to entering a guilty plea. See Meyers, 2011 WL 382591, at *6. Although his defense counsel, the probation officer, and the judge all equivocated on whether Meyers would be required to register, Meyers was ultimately notified by the BCA of his requirement to register. Defs.' App. 18, 60–64, 80. Additionally, Meyers did in fact contest the applicability of registration at the sentencing proceedings, as well as on appeal of his second failure to register conviction. Id. at 18; Meyers, 2011 WL 382591. Meyers, therefore, received sufficient notice of his duty to register and the opportunity to be heard on this issue, so the process he received was that due under the Fourteenth Amendment.

### 3. Substantive Due Process

Substantive due process is derived from the Fourteenth Amendment and "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Proof of a violation of substantive due process rights by an executive official requires evidence showing "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." Bandy-Bey v. Crist, 578 F.3d 763, 767 (8th Cir. 2009). Where the government infringes on a fundamental right, the burden shifts and the government must establish that its means are narrowly tailored to serve a

compelling state interest. See Washington v. Glucksberg, 521 U.S. 702, 721 (1997). Where government action does not implicate a fundamental right, it is constitutional if rationally related to a legitimate governmental purpose. Id. at 728. Presumption of innocence is a fundamental right, "axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." Coffin v. United States, 156 U.S. 432, 453 (1896); see also State v. Edwards, 130 N.W.2d 623, 626 (1964). The innocence presumption is only implicated with punitive laws, not non-punitive regulatory laws. Gunderson, 339 F.3d 639.

Both the Minnesota Supreme Court and the U.S. Circuit Court of Appeals for the Eighth Circuit have determined that Minnesota's predatory offender registration statute (§ 243.166) was intended to be regulatory not punitive. Id.; Boutin, 591 N.W.2d at 717. Determinations of whether a statute is punitive or regulatory are based on a set of factors outlined in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963), and include

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment - retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relations to the alternative purpose assigned.

Id. 168–69 (citations omitted) (emphasis in original). The Minnesota Supreme Court reasoned that Minn Stat. § 243.166 was not a punitive statute because registering with law enforcement and updating one's address is not an affirmative disability, registration statutes have not been regarded as punishment but as "akin to licensing statutes," Lambert v. California, 355 U.S. 225, 229 (1957), the registration

requirement does not promote the traditional aims of punishment since it does not involve confinement or retribution, and its primary purpose was not to punish but to assist law enforcement with investigations. Boutin, 591 N.W.2d at 718. The Eighth Circuit has upheld the Boutin court's determination several times since that decision. See Gunderson, 339 F.3d at 643; Burr v. Snider, 234 F.3d 1052, 1054 (8th Cir. 2000). The United States Supreme Court has also ruled that sex offender registration statutes similar to Minnesota's are nonpunitive in nature. See Smith v. Doe, 538 U.S. 84, 91 (2003) (holding an Alaskan sex offender registration statute, which makes "most of the nonconfidential information [publicly] available on the Internet," to be civil, not punitive). In determining whether a statute is punitive or regulatory in nature, the Supreme Court analyzed both the intent and the effect of the statute. Id. at 92.

Although the Minnesota legislature did not indicate whether Minn. Stat. § 243.166 was to be punitive or nonpunitive, Meyers argues that the statute's placement evinces an intent that the statute be punitive. Meyers' argument is that, although the predatory offender registration statute is not located in Minnesota's criminal code, it is proximate to other statutes regulating prisoner conduct. See Minn. Stat. § 243.55 (regulating contraband articles for inmates); Minn. Stat. § 243.555 (prohibiting smoking by inmates). Given that the inmate statutes regulate the behavior of criminally convicted prisoners, Meyers contends that those statutes are punitive in nature and, by its mere proximity, Minn. Stat. § 243.166 is also to be read as punitive. This logic, however, is flawed. The United States Supreme Court itself has used a statute's placement to determine legislative intent, but its has generally deferred to the titular classifications rather than looking at statutes individually. In Kansas v. Hendricks, 521 U.S. 346 (1997), for example, the Court found a statute's placement in the probate code, rather than

criminal code, indicative of legislative intent to make that statute regulatory. Id. at 361. Here, the statute's proximity to inmate regulations does not make it a punitive statute; like the surrounding regulations, it is a civil, nonpunitive regulation.

Meyers' other arguments regarding the punitive purpose or effect of Minn Stat. § 243.166 are also unavailing. Meyers contends that public shaming, and by extension registration, have historically been regarded as punishment. Modern registration statutes, however, have been found expressly to not constitute punishment and to differ from the "public scorn" of historical shaming statutes. See State v. Manning 532 N.W.2d 244, 248 (Minn. Ct. App. 1995); Lambert, 355 U.S. at 229 (felon registration was for law enforcement, not punishment). Although public shaming may have been punitive in purpose, Minn. Stat. § 243.166 differs in that it is limited to use by law enforcement officials. Minn. Stat §§ 243.166, subds. 7, 7a. Only when the offender is noncompliant with registration is that information made publicly available, and even then only in a limited fashion and for the purpose of equipping "the public to assist law enforcement in locating the offender." Id. § 243.166, subd. 7a.

Additionally, Meyers argues that registration is an affirmative disability or restraint because of the consequences for noncompliance, the restrictions on privacy and liberty rights, and its general burdensomeness. In Boutin, the Minnesota Supreme Court determined that Minn. Stat. § 243.166 did not pose a disability or restraint because it does not restrict the "ability to change residences at will or even to move out of state" and because it is not a permanent requirement. Id. at 717. Under this registration statute, the predatory offender's liberty interests remain intact and his privacy rights are only limited in that he must provide personal information to law enforcement at initial registration and then notify of any change in address. Minn. Stat. §§ 243.166 subds. 4, 4a. Consequences for

noncompliance are not properly considered in determining a disability or restraint, as they are a negative consequence for failure to register rather than an affirmative disability. See Smith, 538 U.S. 84, 102 ("A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense."). Since Gunderson was decided, Minn. Stat. § 243.166 has become more burdensome for individuals who, like Meyers, are homeless and change addresses often. However, the information required from such individuals is the same as for offenders with a permanent address in its content, if not in its frequency; as such, its burden does not make Minn. Stat. § 243.166 a punitive statute.

Finally, Meyers argues that the registration statute is punitive because it involves a finding of scienter and promotes the traditional aims of punishment. The United States Supreme Court in Smith v. Doe held that a finding of scienter in a registration requirement is of little consequence because it "applies only to past conduct . . . a necessary beginning point, for recidivism is the statutory concern." 538 U.S. 105. As for the traditional aims of punishment, the Boutin court found that Minn. Stat. § 243.166 does not promote such aims because it does not involve confinement and is not retributive. 591 N.W.2d at 717. While it may have some deterrent effect, it is minimal, stemming from time served or conviction itself, and is insufficient to transform this statute into a punitive one. See Manning, 532 N.W.2d at 248 ("the registration may have a minimal deterrent effect . . .", but the deterrence may just as well result from conviction or sentence served). In both its intent and effect, then, Minn. Stat. § 243.166 is a nonpunitive regulatory statute rather than a punitive, criminal law.

Although Minn. Stat. § 243.166 has been found nonpunitive in nature and therefore does not impinge on the fundamental right of presumption of innocence, that statute must still be at least rationally

11

related to a legitimate state interest to pass constitutional muster. See Nebbia v. New York, 291 U.S. 502, 524 (1934) ("[W]e must inquire . . . whether the means proposed have reasonable relation to something within legislative power."). Meyers concedes that Minnesota has a legitimate interest in using predatory offender registration legislation to monitor convicted offenders and protect the public, but he contends that Minn. Stat. § 243.166 is not rationally related to that state interest. Both the Boutin court and the Gunderson court found that "[k]eeping a list of such offenders is rationally related to the legitimate state interest of solving crimes." Boutin, 591 N.W.2d at 718. Though the statute is over-inclusive and "may, in fact, require the inclusion of persons who are not predators, [it] is not a fatal Constitutional defect, since the legislative purpose need only be reasonably related to the State's interest . . . ." Gunderson, 339 F.3d at 643 (quotations omitted).

The seemingly arbitrary nature of Minn. Stat. § 243.166, which is applied indiscriminately to all charged with a triggering offense regardless of the accuracy of that initial charging, is troubling.[2] Both the U.S. Constitution and the Minnesota Constitution prohibit "certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them." Boutin, 591 N.W.2d at 716 (discussing U.S. Const. amends X, XIV, and Minn. Const. art. I, § 7); see also State v. Behl, 564 N.W.2d 560, 567 (Minn. 1997) ("legislative enactments [must] not be arbitrary or capricious or, stated another way, . . . they [must] be a reasonable means to a permissive object."). The Gunderson court found that the Minnesota legislature, in requiring registration of individuals convicted of non-predatory

---

[2]The Minnesota Court of Appeals expressed a similar sentiment – "It would have been far easier to resolve in 1995 the question now before the court in 2011." Meyers, 2011 WL 382591, at *4.

crimes arising from the same circumstances as a charged predatory crime, "was attempting to insure the inclusion in the registration polls, of all predatory offenders, including those who take advantage of favorable plea agreements." Id. at 643–44. Although that court determined the law was reasonably related to the legitimate government interest, it is conceivable that under Minn. Stat. § 243.166 an individual could be mischarged or "overcharged" by a zealous prosecutor, although the underlying facts never supported a predatory offender charge. As the Minnesota Court of Appeals noted in Meyers, the low threshold showing required for probable cause is sufficient to require an individual to register, although that "charge is supported not by proof beyond a reasonable doubt, not by clear and convincing evidence, or not even by a preponderance of the evidence . . . ." Id. at 9.

In the instant case, it appears clear that Meyers was mischarged for fourth-degree criminal sexual conduct. See Meyers, 2011 WL 382591, at *4 ("In going through [the file] again, [the prosecutor] . . . came to the conclusion that [Meyers] did not commit a Criminal Sexual Conduct in the Fourth Degree, but in fact committed a Criminal Sexual Conduct in the Fifth Degree."). Although insufficient proof of force or coercion may have existed to establish such a charge at trial, the initial charge was supported by probable cause. See Meyers at *6 ("the charge of fourth-degree criminal sexual conduct was supported by probable cause."). Minn. Stat. § 243.166 was not arbitrary as applied to Meyers, but it may well prove arbitrary or capricious on another set of facts.

### 4. Separation of Powers Doctrine

Meyers failed to argue his separation of powers claim in his summary judgment motion, and therefore it warrants dismissal on this basis alone. See, e.g., United States v. Ortega, Crim. No. 10-88, 2010 WL 3269805, at *11 (D. Minn. May 25, 2010) ("Because Defendants have not raised the

argument in their briefs, they have waived it."). Moreover, Meyers fails to establish that Minn. Stat. § 243.166 violates the separation of powers doctrine ensconced in the United States Constitution and Minnesota Constitution. See Const. art. I–III; see also Minn. Const. art. III, cl. 1 ("No person or persons belonging to or constituting [one branch of government] shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution."). Meyers argues that the prosecutor's discretion in charging gives "almost the complete discretion to determine whether a defendant is required to register." Pl.'s Mem. Supp. Summ. J. 24. The prosecutor's power in this regard, however, is checked by ethical obligations and the probable cause requirement. See, e.g., State v. Lopez, 778 N.W.2d 700, 703 (Minn. 2010). In this case, Meyers could have challenged the probable cause determination of the executive branch by requesting a probable cause hearing before a judge. See Meyers, 2011 WL 382591, at *7 (citing Minn. R. Crim. P. 8.03; 11.02(a)). The availability of judicial review of an executive branch decision is a sufficient check and balance, and therefore Meyers' separation of powers claim is denied.

### 5. Ex Post Facto Laws

Meyers also failed to address his separation of powers claim in his summary judgment motion, and therefore it warrants dismissal on this basis alone. Ortega, 2010 WL 3269805, at *11. Furthermore, Meyers' argument that Minn. Stat. § 243.166 violates the Ex Post Facto Clause of the U.S. Constitution, as well as Article 1, clause 11 of the Minnesota Constitution, fails because, although his registration period has been extended beyond the statutory requirement effective at the time of his 1995 conviction, Meyers' subsequent 2004 convictions for failing to register and for assault occurred at a time when the statute required his registration period to be extended based on either of these

occurrences. Additionally, the Manning court found that Minnesota's registration statute was regulatory not punitive, and therefore not ex post facto. 532 N.W.2d at 247–9. Because an ex post facto law must punish as a crime something which was innocent when committed, Manning at 247 (citing Collins v. Youngblood, 497 U.S. 37, 52 (1990)), a regulatory law such as Minn. Stat. § 243.166, which is not punitive, is per se not an ex post facto law. As Minn. Stat. § 243.166 has already been deemed regulatory, and because at the time Meyers failed to register the law required his registration period to be extended, Minn. Stat. § 243.166 is not an ex post facto law.

### 6. Equitable Estoppel

Meyers failed to include an equitable estoppel claim in his Complaint, yet raised that claim in his memorandum in support of his summary judgment motion. Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and by failing to raise this claim in his initial pleadings or to timely amend his complaint to include this claim, Meyers may not properly argue equitable estoppel at this time.

However, even on its merits, the claim fails. Equitable estoppel claims generally cannot be brought against a government agent's representations made outside of the scope of that agent's authority, Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 419–20 (1990), and cannot be brought against parties for "simple inadvertence, mistake, or imperfect conduct," City of North Oaks v. Sarpal, 797 N.W.2d 18, 25–26 (Minn. 2011). Meyers' equitable estoppel claim fails because no one from the DOC or BCA, the current Defendants, made any representations to Meyers which were false or upon which he detrimentally relied. Although Meyers highlights that "his attorney, the judge, and members of the executive branch all informed him that registration would not be required," Pl.'s Mem. Supp.

Summ. J. 27, the prosecutor and the clear language of the statute stated that Meyers was required to register. Any misstatements made during Meyers' prosecution in 1995 were inadvertent remarks or mistakes, not the sort of "wrongful conduct" required to prove equitable estoppel. Therefore, Meyers' equitable estoppel claim fails.

Additionally, as Meyers stated at the December 19, 2011 hearing that he was only seeking injunctive relief at this time, it is unnecessary for this Court to analyze the sovereign immunity defenses afforded the State under the Eleventh Amendment and 42 U.S.C. § 1983.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

    1.    Defendants' Motion for Summary Judgment [Docket No. 25] is **GRANTED**;

    2.    Meyers' Motion for Summary Judgment [Docket No. 18] is **DENIED**; and

    3.    Meyers' Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                              BY THE COURT:

                                                s/Ann D. Montgomery
                                                ANN D. MONTGOMERY
                                                U.S. DISTRICT JUDGE

Dated: January 5, 2012.